I iPER CURIAM.
This case concerns the validity of a police affidavit which caused two search warrants to issue. The trial judge found no probable cause and suppressed seized evidence. On appeal to this Court, the district court judgment was reversed. The three defendants then sought supervisory relief from the Supreme Court of Louisiana, which remanded to this Court for briefing, oral arguments and an opinion, 640 So.2d 1327, 640 So.2d 1328.
On reconsideration, we remain of the opinion that the affidavit contained sufficient cause for issuance of the warrants; accordingly, the judgment granting the motion to suppress is set aside and we again remand to the trial court for further proceedings.
The two-page affidavit, signed on December 13, 1993, is attached to and made part of this opinion.
Defendants argue that this affidavit is so lacking in indicia of probable cause as to render its existence entirely unreasonable. This and three other instances when search warrants must be declared invalid are listed in United States v. Leon, 468 U.S. 897 at page 923,104 S.Ct. 3405 at pages 3420-21, 82 L.Ed.2d 677 (1984).
The affidavit here, however, did give the magistrate a substantial basis for concluding that probable cause existed, considering the totality of stated 12circumstances discussed in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), rehearing denied at 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). One of the defendants, Guadalupe Coy, identified as a Spanish male, had arrived from Houston, Texas, which is close to Mexico and is a known documented site for distribution of narcotics. Coy appeared “quite confused” and then made a telephone call, which a police officer overheard in part. This eventually led police to Room 156 at the Travel Lodge, where further conversations with all three defendants took place. The defendants gave seriously conflicting statements which are spelled out in the affidavit. A criminal history check showed that two of the three defendants had criminal backgrounds involving illegal drugs.
Everything the police did in this case was legal and in apparent good faith. When advised by defendants that permission to search was being withdrawn, the officers immediately stopped and sought search warrants. These officers were not dishonest or reckless but rather conducted a fair, reasonable investigation from the time of the overheard telephone conversation at the airport to the suspicious conduct and conflicting statements at the motel. The affidavit did reasonably indicate that a crime was being committed and that contraband could be found in the motel room and in the nylon bag carried by one of the defendants (Juvetino Munoz) with a criminal history.
The task of a reviewing court in evaluating a search warrant affidavit is simply to insure that the judge had a substantial basis for concluding that probable cause existed. A magistrate’s determination of probable cause should be accorded great deference. See State v. Hamilton, 572 So.2d 269 (La.App. 1 Cir.1990), writs denied at 578 So.2d 929 (La.1991). In doubtful cases, the preference of the appellate court should be to uphold Isvalidity so as to encourage law enforcement officials to submit evidence to a judicial officer before acting. State v. Mayes, 532 So.2d 331 (La.App. 3 Cir.1988), writs denied at 560 So.2d 27 (La.1990).
Here, we find fairly clear not doubtful probable cause in the affidavit.
DISTRICT COURT JUDGMENT REVERSED; REMANDED.
*1166 IN THE. 24th Judicial _COURT PARISH OF JEFFERSON STATE OF LOUISIANA JPSO ITEM #
APPLICATION FOR AND SWORN PROOF OF PROBARLE CAUSE FOR THE ISSUANCE OF A SEARCH WARRANT HEREIN Wth Judlcial
PERSONALLY CAME ANO APPEARED BEFORE ME, ihs undesigned Judge of the Court, Pariih of Jeflerion, Slat* of Louisiana,_n_Sat. .0» Simone.-- - — of the Jefferson Parish Sheriff's Office, who» upon being duly by me sworn, deposed) and sayfs):
THAT A SEARCH WARRANT SHOULD BE ISSUED FOR THE SEARCH OF _ JrayQl F.nrJg» Hotel RaonJL 156, located ..at .2240 Veterana Hwy,. Kenner#. Le. m. -**uLane-aqua-and~pluk-ayJU»tt-.bag .wltU_tha..wocda lotttnatitmaLSplrlJLJJtl.B*me. —
FOR THE FOLLOWING ITEMS:
On 12/13/93» Sgt, G. Simone ami DEA S/A Ü. Cibbtr, who are aselgnud to the Haw Orleans International Airport Narcotice Detail, report of conducting a surveillance of inbound Southwest airlines fllght^/'/S'from Houston, Tx. The officers monitor this flight on a regular basis due to the face that it has passengers connecting from cities close to the Mexican border which Is a major distribution point for narcotics and also that Houston, Tx is also a known documented location .for the distribution of narcotics. As the passengers proceeded to deplane the aircraft the officers attention was drawn to a Spanish male subject later Identified as Guadalupe R« Coy, The officers noted that Coy appeared to be quite confused as he Just stood around the gate area and walked back and forth ;or a couple of seconds. Then with out any further hesitation he proceeded directly to the lobby of the airport and placed a phone call. Coy than waited for a moment and then asked t be connected to room 156, at which time ha addreseed someone as Rick. After a brief conversation which Sgt. Simona was unable to hear, Coy hung up the phone and proceeded to the baggage claim area where he picked up one bag and then proceeded to the cab stand. At this time Sgt, Simona and S/A Gibbs approached Coy, identified themselves as police officers and asked to speak with him for moment. Coy'was completely cooperative and itated yes. He was then asked for his airline- ticket which showed travel from San- Antonio to Hew Or Leans with no return trip, lit was than naked far identification which he produced in his correct name. At this time both documents were returned to him and the officers asked him about the purpose of his trip to Hew Orleans* Initially Coy claimed that he was here on a pleasure trip. Sgt. Simone then naked him if he had any plana to meet with someone while he was here and Coy stated that he was meeting with a friend of his ñamad Rick. Coy was unable to provide the officers with ftickfs last name, but did state that he bed met Rick in San Anton Sgt. Simone then «eked Coy were he was suppose to meet with Rick, and he stated that it was at some hotel downtown, but that he wasn’t aura which one. At this .pointSgt. Simone quesclo Coy about the laat time he had spoke with Rick and when this pleasure trip had been planned Coy related that he hadn’t spoke to Rick In a few Weeks and that was when the Arrangements had been made. Coy never would acknowledge that he had spoken to Rick several minutes before the officers approached him. Coy appeared to be extremely vague with his answers and unsure of the reason he was in New Orleans, because he changed his story about meeting 'lick for pleasure to come meet with in ordjr to look for a Job. At this point the officers r¿quustod and received verbal consent from Coy to search his bag and person. This search revealed no aignes of contraband, but Sgt. Simone located a red piece of paper with, Travel Lodge room 156 on same with a phone number of 5064697341 also written on it. Sgt. reconised this number to have a Kenner exchange which Indicated the Rick was staying at the travel Lodge located on Veterans Blvd., Kenner, La.«although Coy had indicated that he was suppose to meet with Rick downtown, which served to heighten the officers suspicions. Finding no signs of contraband, the officers were forced to terminate their interview with Coy, at which tima he departed and proceeded towards th« cab stands.
At this point, Sgt* Simone and S/A Gibbs proceeded to the Travel Lodge Hotel,Located at 2240 Veterans Blvd,, Kenner, La. Upon arrival, the off teem exited their vehicle and proceded to lookroom 156, Just as the officers located the room, a Spanish male —⅝7 n O. yp'TUPCi-SWORN TO AND SUBSCRIBED BEFORE ME JEFFERSON PARISH SHERIFF'S OFFICE TH|$ Uih_0AY0F ,9 »_
COPIES: t-Judgj Signing I-District Attorney ,-Crimlnal RccordiTtpom l-Olllcsr Caí» FU. ’ JMO J.Í3M-J
[[Image here]]
PARISH OF JEFFERSON STATE OF LOUISIANA
[[Image here]]
*1167 CONTINUED PROM PAGE t
IN THE 24th JUDICIAL COURT PARISH OP JEFFERSON STATE OF LOUISIANA
JPSO ITEM# .
APPLICATION FOR SEARCH WARRANT
later identified Ricardo Guerrero opened Che door. Faced with this situation, the officers identified themselves as police officers and asked Co apeak with hin for moment. Guerrero stated yea and allowed the of f ic*xz--to enter hie toon. The officers then explained to Guerrero that they were conducting and investigation and asked him about his knowledge of Coy» Guerrero stated that Coy was coning to meet hin in Hew Orleans at which point they were both going to Illinois to pick up some vehicles• Just about ehie time Coy arrived at the room and was questioned about his knowledge of vehicles in lllinioe. Coy refused to answer the officers. At this point Guerrero asked what all of this was about» At which time he was informed that the officers were narcotics detectives. Guerrero then cut Sgt. Simone short and stated that the officers could search anything they wanted* As the officers proceeded to search the room Guerrero withdrew hli consent almost Immediately when Sgt. Simone proceeded to examine some paper work he had In a briefcase on the dresser. At this point the officers discontinued their search and requested assistance from other officers while Sgt. Simone and S/A Gibbs attempted t secure a search warrant for the room. While waiting for the additional officers to arrive, a third subject later identified as Juventino Munoz walked Into room 156 carrying a aqua and blue nylon bag. At this point Sgt. Simone asked Munoz to step out of the room for a moment which he complied with. Munoz was questioned about his knowledge of Guererro and Coy. Munoz explained that he never really knew either subject and someone had told him to come over to this room. He couldn't ldentlfythls subject, nor did he have any explanation for why he was there. Hunoz wee then questioned about the bag.he was In possession of. Munoz stated that the bag was given to him by the subject he could not ldentifyand that he had no knowledge of what it contained. He was then asked for consent to search the bag which he denied. While Sgt. Simone was interviewing Munoz, the assisting officers arrived at the hotel. SA Gibbs then conducted a criminal history check on all of the above subjects and discovered the following informations Munoz was arrested December 1976. for conspiracy to distribute 17,790 pounds of marijuana, in Texas. Sepomber of 1977» Hunoz was arrested for conspiracy to distribute 66,000 pounds of marijuana end wav sentenced 48 Months. However before, Hunoz reported to prison, he wee arrested for possession of cocaine (257 grams) in Illinois. Guerrero, Ricardo was arrested in Texas on January 20, 1991, for possession of marijuana and the seizure of 24,300 dollars In U.S. currency* He was aleo Involved in a previoua investigati» during which he wee negotiating the sale of 1,000 pounds of.marijuana to undercover agents. Ho record found on Coy. -
Aleo not mentioned earlier, Munoz vas staying at the Travel Lodge located at 5733 Airline Highway, Metairie, Louisiana, with a second subject he denied being in the company of. It was also discovered that Guerrero had traveled under the name of Juan Chepa, from Chicago to Hew Orleans on 12-12-93. While $tg. Simone and SA Gibbs were In the process of preparing the search Warrant, 6tg. Simona was contacted by agent Delaughter who related that while in the room with the subjects in question, Guerrero grabbed paperwork off of the dresser and attempted to eat it. Based on the aforementioned facts and circumstances it is requested that a aearch warrant be issued for the hotel room* and nylon bag that Hunos has possession of.
[[Image here]]