688 So.2d 119 (1997)
STATE of Louisiana
v.
Ricardo GUERRERO.
STATE of Louisiana
v.
Juventino MUNOZ.
Nos. 96-KA-851, 96-KA-852.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 1997.
*120 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Louise Korns of counsel, Gretna, for Plaintiff/Appellee.
Martin E. Regan, Jr., Thomas Calogero, Regan & Boshea, New Orleans, for Defendant/Appellant.
Before BOWES, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
On December 13, 1993, Jefferson Parish Sheriff Deputy Sergeant Keith Simone of the Narcotics Interdiction Unit and Special Agent Gibbs of the Drug Enforcement Administration were engaged in their usual job assignment of routine surveillance at the New Orleans International Airport. They were engaged in a "profile survey" of a Southwest Airlines flight. The law enforcement personnel regularly watch the Southwest Airlines flights from Houston, Texas because they have passengers connecting from cities close to the Mexican border and because Houston is a known location for the distribution of narcotics. On the date at issue, the officers' attention was attracted by a Spanish male traveling alone. He stayed near the gate, walking back and forth, appearing to be confused, and then used the telephone. The officers overheard him ask for room number 156 and talk to someone named "Rick". He hung up the phone, headed to baggage claim where he retrieved one piece of luggage and headed for a cab stand. The officers approached him and asked to speak to him. He agreed. The officers asked to see his airline ticket, which he gave to them. The officers requested identification and he identified himself as Guadalupe R. Coy. He then produced identification in the same name. The officers asked him the purpose of his trip and whether he was meeting anyone. He said the purpose was pleasure and that he was meeting a friend named "Rick". They asked him Rick's last name and he said that he did not know Rick's last name; he had met Rick in a bar in San Antonio and they had planned this trip at that time. He said that he was meeting Rick at a hotel downtown, but he wasn't sure which one. The officers asked him when he had last spoken to Rick and he said several weeks ago. Coy denied speaking to Rick on the phone at the airport. He then changed his story saying that he had come to New Orleans not for pleasure, but to look for work. At this point the officers asked Coy if they could search him. He consented. They found a slip of paper in his pocket with the words "Travel Lodge", "156" and "XXXXXXXXXX". Sergeant Simone recognized "469" as the telephone exchange for Kenner and concluded that the number referred to the Travel Lodge in Kenner. The officers offered Coy a ride to the Travel Lodge in Kenner, which he declined. Coy headed towards the cab stand.
The officers went to Room 156 at the Kenner Travel Lodge. The door to room 156 was opened by a Spanish male later identified as Ricardo "Rick" Guerrero. The officers asked to search the room and he consented. When Sergeant Simone began to search his briefcase, which contained Western Union wires of funds, Guerrero withdrew his consent. The officers then stopped their search and began steps to obtain a warrant. At this point, Juventino Munoz entered the room carrying a pink and aqua nylon gym bag with the words "International Spirit" *121 thereon. The officers asked Munoz if they could search his bag and he refused. The officers did a criminal history check of Munoz, Coy and Guerrero and discovered prior narcotic arrests, including one for Munoz for conspiracy to distribute sixty-six thousand [66,000] pounds of marijuana. It was discovered that Guerrero had traveled to New Orleans under an assumed name. While being questioned, Guerrero grabbed paperwork from the dresser and tried to eat it. Two search warrants were issued and the premises and bag were searched, disclosing 1,299 grams of "Black Tar" heroin, individually wrapped.
The grand jury indicted the three on possession with intent to distribute heroin. The defendants moved to suppress the evidence. After a hearing the trial court found no probable cause, granted the motion to suppress and suppressed the seized evidence. The State appealed to this Court; we reversed finding probable cause for the issuance of the warrants. State v. Coy, 94-329 (La.App. 5 Cir. 5/26/94). Defendants filed writs with the Supreme Court, which remanded the case to this court for briefing, full oral argument and an opinion. State v. Guerrero, 94-1614 (La.6/24/94), 640 So.2d 1327; State v. Munoz, 94-1682 (La.6/24/94), 640 So.2d 1328. This court complied with the Supreme Court's order and issued an opinion again finding probable cause for the issuance of the warrants and setting aside the trial court judgment granting the motion to suppress. State v. Coy, 94-329 (La.App. 5 Cir. 11/17/94), 646 So.2d 1164. The matter proceeded below and on the day set for trial, defendant Guerrero withdrew his not guilty plea and entered a plea of guilty to accessory after the fact to possession with intent to distribute heroin. Defendant Munoz withdrew his not guilty plea and entered a plea of attempted possession with intent to distribute.
Defendant Munoz was sentenced to fifty (50) years at hard labor with credit for time served and without benefit of parole, probation, or suspension of sentence.
Defendant Guerrero was sentenced to one year in the Jefferson Parish Correction Center, with credit for time served, a fine, court costs, and other special conditions of probation.
Defendants appeal, raising two specifications of error:
1. The affidavit did not support a finding of probable cause for the issuance of the warrants.
2. The affidavit was based upon evidence found as a result of the unreasonable stop of co-defendant Guadalupe Coy.

SPECIFICATION OF ERROR ONE:
The standard to be applied by an appellate court in reviewing a search warrant affidavit is: Did the trial court judge or magistrate, under the totality of the circumstances presented to him in the affidavit, have a substantial basis for concluding that probable cause existed for the issuance of the warrant, based upon reasonable and trustworthy information sufficient to support a reasonable belief that an offense had been committed, and that evidence or contraband may be found at the place to be searched. LSA-C.Cr.P. art. 162; Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) rehearing denied 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453(1983); State v. Fedrick, 614 So.2d 723 (La.App. 5 Cir.1993); State v. Coy, 94-329 (La.App. 5 Cir. 11/17/94), 646 So.2d 1164.
In the instant case, the trial court based its issuance of the warrant upon the following facts in the affidavit made by Sergeant Simone: (1) The flight is one which has passengers connecting from cities close to the Mexican border; a known documented location for the distribution of narcotics; (2) The flight also is from Houston; a known documented location for the distribution of narcotics; (3) The lone Spanish male traveler appeared initially "confused as he stood around the gate area and walked back and forth for a couple of seconds. Then without further hesitation he proceeded directly to the lobby of the airport and placed a call"; (4) He traveled with only one bag that he picked up from the baggage claim; (5) He changed his story, initially saying he was in New Orleans for pleasure and later saying he was in New Orleans to find work; (6) He denied talking to Rick on the phone, although *122 the officers had heard him a few minutes earlier; (7) His story, namely, that he traveled to New Orleans for pleasure to meet a person whose last name he did not know and who he met in a bar in San Antonio and that he was supposed to meet that person at a downtown hotel, but he did not know which one, is a weak story; (8) A criminal history check of the three revealed past criminal arrests for drug violations; (9) Guerrero attempted to eat documents.
We find that there was sufficient probable cause for the issuance of the warrants.
SPECIFICATION OF ERROR TWO:
Defendants argue that the evidence secured by the search warrant was premised upon illegally secured evidence, namely the slip of paper from Coy's pocket stating "Travel Lodge 156 XXXXXXXXXX". Defendants argue that the slip of paper was illegally secured from Coy because there was no reasonable basis for the search. As indicated by the list of factors above, even if we do not consider the slip of paper, probable cause existed for the issuance of the warrants. Furthermore, the encounter with Coy was consensual on his part and he was free to leave at any time, thus there was no Fourth Amendment "seizure" of his person. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), reh. denied 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); State v. Jones, 624 So.2d 1249 (La. App. 5 Cir.1993). Therefore, we find no merit in this specification of error.
ERRORS PATENT
Our examination of the record before us indicates two errors patent upon the face of the record.
First, defendant Guerrero was charged by indictment with a violation of LSA-R.S. 40:966 A, possession with intent to distribute heroin. However, he pled guilty to LSA-R.S. 40:25 and LSA-R.S. 40:966A, accessory after the fact to possession with intent to distribute heroin. Because the "accessory after the fact" portion of the plea is not a lesser included offense under LSA-R.S. 40:966 A, under LSA-C.Cr. P. art. 487, the district attorney need not file a new indictment, but rather can amend the original indictment. In the instant case, the original indictment was never amended. While this situation appears res nova in this Circuit, it has been addressed by our brethren on the First Circuit in State v. Barclay, 591 So.2d 1178, 1182 (La.App. 1 Cir.1991) writ denied 595 So.2d 653 (La.1992), wherein the court found "where ... the defendant enters a plea of guilty to a crime nonresponsive to the original indictment when such plea is acceptable to the district attorney, the defendant is fully aware of the charge to which he has pleaded as shown by extensive Boykinization, and the plea is not prejudicial to the defendant, any error caused by a failure to formally amend the indictment is harmless." We agree with the First Circuit and adopt the holding of Barclay, supra, on this point. In the instant case, Guerrero's plea was acceptable to the district attorney. The transcript and the guilty plea form indicate defendant was fully aware of the charge to which he pled. The plea was not prejudicial to the defendant. Accordingly, we conclude that the failure to amend the indictment was harmless error.
The second error patent is that the transcript indicates that defendant Munoz was sentenced "to fifty years at hard labor without benefit of parole, probation or suspension of sentence, giving him credit for all time served." The minute entry which serves as the commitment, only recites "Fifty (50) Years without benefit of probation or suspension of sentence. Defendant given credit for time served." The minute entry should read "without benefit of parole, probation or suspension of sentence ..." because where there is a discrepancy between the transcript and the minute entry, the transcript is controlling. State v. Lynch, 441 So.2d 732 (La.1983). Accordingly, the matter is remanded to the district court for correction of the minute entry.
For the reasons discussed, the conviction and sentence of Ricardo Guerrero is affirmed and the conviction and sentence of Juventino Munoz is affirmed. The matter is remanded to the court below for amendment of the *123 minute entry to indicate that Juventino Munoz sentence is without benefit of parole.
AFFIRMED.