ROBERT A. CHAISSON, Judge.
|j,On August 13, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, Zenas A. Fruge, with possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1 (count one); possession of a handgun while in possession of marijuana, in violation of LSA-R.S. 14:95(E) (count two); and possession with intent to distribute cocaine, in violation of LSA-R.S. 40:967 A (count three). At the arraignment, defendant pled not guilty.
The matter proceeded to trial before a twelve-person jury on May 12, 2011. After considering the evidence presented, the jury found defendant guilty of attempted possession of a firearm by a convicted felon (count one), attempted illegal carrying of weapons (count two), and possession of cocaine (count three). On May 23, 2011, the trial court sentenced defendant to seven and one-half years at hard labor, without benefit of parole, probation, or suspension on count one; five years at hard labor, without benefits on count two; and five |,(.years at hard labor on count three, to run concurrently.[1] Defendant now appeals.

FACTS

In July of 2010, Detectives Donald Herr-mann and Kevin Treigle of the Kenner Police Department Narcotics Division were conducting an ongoing narcotics investigation of Joshua Serrano. While conducting surveillance on Serrano in the late evening hours of July 13, 2010, Detective Herrmann and other members of the narcotics team observed Serrano meet defendant at the America’s Best Inn located on Veterans Boulevard in Kenner. The officers then observed Serrano and defendant enter room 334. Approximately ten minutes later, Serrano exited the room, got into his vehicle, and left the premises. Detective Herrmann and the other officers followed Serrano, and an hour and a half later, returned to the hotel to conduct further surveillance on room 334.
*1115 At some point, defendant exited room 334 and proceeded downstairs where he was approached by Detectives Herrmann and Treigle. A field interview was conducted with defendant who advised the officers that he was staying in room 221, despite having been seen exiting room 334. In addition, the officers noticed that defendant was holding in his hand a room key and an envelope marked “334.” Detective Treigle then detained defendant while Detective Herrmann spoke to hotel management to obtain information about the individual registered for room 334. The room reservation revealed that room 334 was registered to Dawn Chriss, whose home address proved to be the same as an address previously used by defendant.
1/The narcotics detectives obtained a warrant and executed a search of room 334. During their search, the officers discovered a black travel bag that contained an unlabeled orange prescription bottle. Inside that bottle, the officers recovered a clear plastic bag with a white powdery substance, a clear plastic bag which contained two smaller bags with green vegetable matter inside, and a third clear plastic bag containing thirteen white tablets.[2] The officers also found a box of sandwich bags, a digital scale, an unloaded Titan .25 caliber handgun, a bottle of inositol, and five hundred twenty-one dollars in U.S. currency. In addition to the black travel bag, the officers located two suitcases in the room, one on the chair and one on the footrest. These contained clothing for a large individual, a bag with fifty-one live .22 caliber bullets, several pieces of documentation with defendant’s name, and three cell phones.
During the course of the search, Dawn Chriss, the registered hotel guest and defendant’s girlfriend at the time of the incident, returned to room 334. According to Chriss, she informed the officers that the hotel room they were searching was hers and further advised them that she did not have any contraband “on her person.” At trial, Chriss claimed that all the contraband in the room was hers; however, Detective Treigle testified that on the night of the search, Chriss denied knowledge of any of the contraband in the room.
Detective Treigle, after being accepted as an expert in narcotics use, packaging, and distribution, testified that he participated in the investigation and arrest of defendant. He noted that 5.8 grams of cocaine was found in the room, which amount is indicative of street level distribution. Detective Treigle further testified that inositol is a dietary supplement commonly used to cut cocaine or Rheroin in order to increase the volume of the drug and thereby the profit. According to Detective Treigle, after the cocaine is cut with the inositol, it is then weighed on a scale and packaged for sale in smaller amounts in clear plastic bags.
Detective Treigle also testified regarding the significance of the other items seized from the hotel room. Specifically, Detective Treigle testified that drug dealers commonly carry firearms to protect their narcotics and currency from customers and rival drug dealers. He further explained that it is common for drug dealers to rent hotel rooms or vehicles in someone else’s name with a clean record to elude detection by law enforcement. With respect to the denominations of the currency recovered from the room, Detective *1116 Treigle testified that drug transactions are usually accomplished using small bills.[3] Additionally, drug dealers will typically carry multiple cell phones with different phone numbers to elude detection by the police.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assigned error, defendant contends that the trial court erred in denying his motion for mistrial based on the admission of Detective Treigle’s inadmissible hearsay testimony.
At trial, Dawn Chriss, the registered guest of hotel room 334, testified that she checked into the room earlier that day and brought her clothes, as well as defendant’s bag containing his clothes, into the room. Chriss then proceeded to work at Popeye’s, and at some point during her shift, defendant retrieved the room key from her. When she returned to the hotel after work, police officers were in her room conducting a search. According to Chriss, she told the officers that the hotel room they were searching was hers. She further advised them that she did |finot have any contraband on her person; however, the officers did not ask her whether she had any knowledge of the items found in the room.
During her trial testimony, Chriss admitted that the contraband in the room was hers. Chriss testified that she had a bag which contained bullets and a separate smaller bag which contained “weed; ... a pill bottle with weed in it, and ... marijuana with coke, ... sandwich bags, ... a scale, and ... some stuff that you put on the marijuana to make it taste good.” She further testified that the money seized from the room was her savings from Popeye’s. When Chriss was questioned further about the specifics of the contraband found inside the room, including the make and model of her firearm, she elected to invoke her Fifth Amendment right against self-incrimination and refused to answer any more questions.
The State subsequently called Detective Treigle as a witness. According to Detective Treigle, when Chriss arrived at the hotel room, she advised him that she had just gotten off work. Detective Treigle stated that he specifically asked Chriss if she had any knowledge about the narcotics found in the room, which she denied. At this point, defense counsel objected on the basis that Chriss was no longer available for questioning. After a bench conference, the trial judge allowed the State to proceed with very limited questioning, as follows:
Q: Sorry, Detective. I’ll ask you that last question again. Did you ask Ms. Chriss about the narcotics that were found in the room?
A: Yes, ma’am.
Q: And did she indicate whether or not she had any knowledge of the narcotics found in the room?
A: She denied knowledge of it, and further stated that she works from four in the afternoon, till eleven o’clock at night, and she was working, and she had nothing there.
|7Q: At any time, did she take ownership of the narcotics in the room?
A: No ma’am, she did not.
Prior to closing arguments, defense counsel moved for a mistrial on the basis that Detective Treigle testified to an area that was beyond the scope of Chriss’s tes *1117 timony, and therefore, defendant was precluded from challenging the evidence because Chriss had invoked her Fifth Amendment right. The trial court denied the motion for mistrial, ruling:
Well, I’m going to deny the motion for mistrial. I don’t feel — we came to the bench, and it was restricted to really one question. And I didn’t find it — because it went directly to her credibility where she did testify on that specific point. So I didn’t find that to be outrageous. They didn’t go any further than that, and they stopped, so.
I’ll note your objection. And we did go through, with Ms. Chriss, the, you know, she could stop at any time, she was aware of all — all of her rights; and so, she chose to exercise it.
But the point that they elicited testimony from, was an area of questioning that she did answer questions to, so they were allowed to ask this officer to impeach her on her credibility, so.
That’s a weight issue for the Jury. The jury is going to determine that weight, if anything, they give it, so.
Defendant now challenges the trial court’s denial of his motion for mistrial. He specifically contends that Detective Treigle’s testimony constituted inadmissible hearsay evidence which defendant was precluded from challenging because Chriss invoked her Fifth Amendment right and refused to testify further. Defendant additionally asserts that the evidence was improperly admitted under the guise of the State seeking to impeach its own witness. We find no merit to defendant’s arguments.
[sThe Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right “to confront and cross-examine the witnesses against him.” La. Const. art. I, § 16. The main purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Cross-examination is the primary means of testing the truthfulness of testimony. State v. Robinson, 01-273 (La.5/17/02), 817 So.2d 1131, 1135; State v. McGee, 07-130 (La.App. 5 Cir. 6/26/07), 963 So.2d 449, 452.
The credibility of a witness may be attacked by any party. LSA-C.E. art. 607(A). A witness’s prior inconsistent statement may be used to impeach his credibility. See, State v. Johnson, 01-0842 (La.App. 5 Cir. 2/13/02), 812 So.2d 106, 115, writ denied, 02-1037 (La.3/21/03), 840 So.2d 532.
LSA-C.E. art. 607 provides, in pertinent part:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
If the witness has had a fair opportunity to admit the fact and has failed distinctly to do so, extrinsic evidence of a prior inconsistent statement is admissible, not to prove the truth of the matter asserted, that is, not for its hearsay content, but to *1118 establish the fact of contradiction as a means of impeaching a | ^witness’s general credibility. However, if the witness admits the statement, he has impeached himself by his own testimony, and thus, the statement is inadmissible. State v. McGee, 963 So.2d at 458; LSA-C.E. art. 613.
In the instant case, Chriss specifically testified that all of the contraband belonged to her. She explained that the detectives never asked her whether she had any knowledge of the contraband in the room, but merely asked her whether she had any contraband “on her,” which she denied. As such, Chriss’s attention was fairly directed to the matter, she had a fair opportunity to admit that she had been questioned about the drugs and had denied any knowledge of them, and she distinctly failed to do so. Thereafter, Detective Treigle’s testimony that Chriss denied ownership and knowledge of the contraband when asked at the scene was properly admitted as extrinsic evidence attacking her credibility.
Further, we find no merit to defendant’s argument that he was denied his constitutional right to confront witnesses. The record shows that the trial judge very carefully limited the State’s questioning of Detective Treigle. In particular, the questioning was limited to whether Chriss indicated that she had knowledge of the narcotics found in the room and whether, at any time, she took ownership of the narcotics in the room.
Moreover, any alleged error with respect to the admission of Detective Trei-gle’s testimony can be deemed harmless. At trial, the State presented evidence that Chriss had checked into the hotel room earlier that day and had brought her clothing and a bag containing defendant’s clothes into the room. Chriss proceeded to work at Popeye’s, and at some point during her shift, defendant retrieved the room key from her. Defendant was seen meeting with a suspect, who was under a narcotics investigation, at the hotel and taking him back to room 334. About ten minutes later, the narcotics suspect exited room 334 and left the premises. The | inofficers followed this suspect, and about an hour and a half later, returned to the hotel room to conduct further surveillance on room 334. When defendant exited the room, the detectives interviewed him. Defendant told the officers that he was staying in room 221, despite having in his possession the key to room 334. Further, although Chriss testified that the contraband in the hotel room belonged to her, the State presented evidence that one of the suitcases contained several pieces of documentation with defendant’s name. Moreover, even if the jury had believed Chriss that the contraband was hers, it nonetheless could have found, based on the evidence presented at trial, that defendant had dominion and control over the contraband while in the hotel room.
For the reasons set forth herein, we find no error in the trial court’s denial of defendant’s motion for mistrial based on the alleged improper admission of Detective Treigle’s hearsay testimony. Accordingly, this assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assigned error, defendant challenges the trial court’s denial of his motion to suppress evidence. He specifically argues that the search warrant failed to establish a “substantial basis” for concluding that probable cause existed to search room 334.
Every person is protected by the United States and Louisiana Constitutions against unreasonable searches and seizures of his house, papers, and effects. Thus, a search *1119 and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the things to be seized. U.S. Const. amend. IV; La. Const. art. I, § 5.
In order to be valid, a search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, Inreciting facts establishing the cause for issuance of the warrant. LSA-C.Cr.P. art. 162. Probable cause for the issuance of a search warrant “exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” State v. Lee, 05-2098 (La.1/16/08), 976 So.2d 109, 122, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). Further, the affidavit must contain, within its four corners, the facts establishing the existence of probable cause for the warrant. The issuing magistrate must make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. State v. Green, 02-1022 (La.12/4/02), 831 So.2d 962, 969.
The task of a reviewing court is simply to insure that under the totality of the circumstances the issuing magistrate had a “substantial basis” for concluding that probable cause existed. If the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing courts should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. State v. Payne, 10-46 (La.App. 5 Cir. 1/25/11), 59 So.3d 1287, 1296, writ denied, 11-387 (La.9/16/11), 69 So.3d 1141.
According to LSA-C.Cr.P. art. 703 D, when evidence is seized pursuant to a search warrant, the defendant bears the burden of proof on his motion to suppress that evidence. The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of that discretion. | ]2State v. Major, 09-370 (La.App. 5 Cir. 11/24/09), 26 So.3d 289, 295, writ denied, 09-2802 (La.6/18/10), 38 So.3d 320.
In the present case, the search warrant affidavit set forth that on July 13, 2010, members of the Kenner Police Narcotics Section were conducting a narcotics investigation of Joshua Serrano. The detectives observed Serrano leave his apartment and proceed to America’s Best Hotel. They then saw Serrano exit his vehicle and meet with a black male recognized by detectives from previous narcotics investigations as Zenas Fruge. It was known to detectives that Fruge had a pending charge for possession with intent to distribute marijuana, as well as numerous other arrests and convictions for possession with intent to distribute illegal narcotics. The affidavit further provided that the detectives observed Fruge and Serrano enter hotel room 334. Ten minutes later, Serrano exited room 334, entered his truck, and proceeded home. Serrano was stopped due to outstanding attachments for his arrest and a search revealed two large clear bags containing 56.9 grams of marijuana. Serrano denied being at America’s Best Hotel. The detectives then set up surveillance at the hotel on room 334 and observed Fruge exit the hotel room and walk downstairs. The de *1120 tectives approached Fruge and conducted a field interview. Fruge advised the detectives that he was staying in room 221; however, he was in possession of a key for room 384. A registration inquiry with the hotel management revealed that room 334 was registered to Dawn Chriss who gave the same home address that Fruge had provided at the time of his last arrest.
Based upon the information contained in the affidavit, including Serrano’s meeting with defendant who was known to have pending narcotics charges, Serrano’s subsequent arrest where 56.9 grams of marijuana were found on his person, and defendant’s attempt to disassociate himself with hotel room 334, we | 13find that a substantial basis existed for concluding that probable cause existed for the issuance of a search warrant. See State v. Coy, 94-329 (La.App. 5 Cir. 11/17/94), 646 So.2d 1164, writ denied, 94-2935 (La.12/9/94), 648 So.2d 379, writ denied, 94-2943 (La.12/9/94), 648 So.2d 380, writ denied, 95-0350 (La.3/10/95), 650 So.2d 1188, where this Court concluded that the police officer’s affidavit in support of the search warrant gave the magistrate a substantial basis for concluding that probable cause existed to search defendants’ hotel room and a nylon bag. In Coy, the affidavit stated that one defendant had arrived at the airport from Houston, Texas, which is a documented site for distribution of narcotics; further, defendant appeared “quite confused” when he arrived and then made a phone call which the police officer overheard in part. This eventually led police to room 156 at the Travel Lodge, where further conversations took place with all three defendants. The defendants gave seriously conflicting statements, and two of the three defendants had criminal backgrounds involving illegal drugs. This Court found the information set forth in the affidavit provided probable cause for the issuance of the warrant and, accordingly, reversed the judgment of the district court which granted defendants’ motion to suppress evidence.
Likewise, in the instant case, we find that a substantial basis existed for concluding that probable cause existed for the issuance of a search warrant for hotel room 334 at America’s Best Inn. Accordingly, we find that the trial court did not abuse its discretion in denying defendant’s motion to suppress evidence.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
114Our review reveals that the trial court failed to impose mandatory fines on two of the counts. The jury found defendant guilty of attempted possession of a firearm by a convicted felon (count one) and attempted illegal carrying of weapons (count two). The penalty provisions for these offenses, LSA-R.S. 14:27:95.1(B) and 14:27:95 E, require that a mandatory fine be imposed.[4]
In State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10), 54 So.3d 678, 688, writs denied, 10-2758 (La.4/25/11), 62 So.3d 89 and 10-2752 (La.5/20/11), 63 So.3d *1121 974, this Court declined to exercise its authority to correct an illegal sentence involving the failure of the trial court to impose a mandatory fíne, reasoning that the State did not object to the trial court’s failure to impose the fine, and that the defendant was indigent. Likewise, in the instant case, the State did not object to the trial court’s failure to impose the fines. Additionally, defendant is represented by the Louisiana Appellate Project on appeal and appears to be indigent. State v. Pitt, 09-1054 (La.App. 5 Cir. 4/27/10), 40 So.3d 219, 224, writ denied, 10-1141 (La.12/10/10), 51 So.3d 725. We therefore decline to correct the illegally lenient sentences with regard to the trial court’s failure to impose the fines on counts one and two.
Accordingly, for the reasons set forth herein, we affirm defendant’s convictions and sentences.

CONVICTIONS AND SENTENCES AFFIRMED

. The State subsequently filed a multiple offender bill of information pursuant to LSA-R.S. 15:529.1, alleging defendant to be a second felony offender. However, the multiple offender proceedings are not part of the instant appeal.

. Raven Barrios, an expert in the identification and analysis of controlled dangerous substances, testified that the white powdery substance tested positive for cocaine and the green vegetable matter tested positive for marijuana. No controlled dangerous substances were found in the white tablets.

. The currency found in the room consisted of 22 twenty dollar bills, 8 ten dollar bills, and 1 one dollar bill.

. LSA-R.S. 14:95.1(B) states that the defendant shall be fined not less than one thousand dollars nor more than five thousand dollars; and LSA-R.S. 14:95 E states that the offender shall be fined not more than ten thousand dollars. Additionally, the attempt statute, LSA-R.S. 14:27, applicable to count one and two, provides that the defendant “shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.”