WALTER J. ROTHSCHILD, Judge.
 

 |2On June 21, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Sterling Major, with possession of a firearm by a convicted felon (Count 1) and possession of cocaine in excess of 400 grams (Count 2), in violation of LSA-R.S. 14:95.1 and R.S. 40:967 F, respectively.
 
 [1]
 
 Defendant pled not guilty. He filed a motion to suppress evidence and a motion to reconsider the motion to suppress, which were both denied.
 

 Counts 1 and 2 were severed for trial, and a jury trial on Count 2 was held on September 15, 16, and 17, 2008. On September 17, 2008, when the jurors could not reach a verdict, defendant withdrew his not guilty plea and pled guilty as charged to both counts under
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). On that |ssame date, the trial court sentenced defendant to imprisonment at hard labor for 15 years without benefit of parole, probation, or suspension of sentence on each count to run concurrently.
 

 FACTS
 

 [2]
 

 The Jefferson Parish Sheriffs Office (JPSO) arrest report and probable cause affidavit indicate that on April 12, 2006,
 
 *292
 
 the JPSO executed a search warrant at 1049 Beechwood Drive in Harvey. During that search, the agents located 1736 grams of cocaine, a semi-automatic handgun, and paperwork and clothing which showed that defendant resided there. The agents also located $1,423.00 in various denominations which they believed was consistent with mid-level narcotics trafficking.
 

 In a lengthy affidavit in support of the application for a search warrant, JPSO Detective Elvin Módica stated that he was contacted by a reliable and credible confidential informant (Cl) who informed him that cocaine was being distributed on Eli Court in Gretna by narcotics trafficker # 1, who was leading an organization of mid-level and street level narcotics peddlers. Additionally, the Cl said that defendant was a family member of narcotics trafficker # 1 and was also a mid-level narcotics trafficker embedded in this organization. The Cl was unable to supply a home address for defendant, but he knew that defendant resided in Harvey. A record check of defendant revealed a previous conviction for possession of cocaine and an arrest for crack cocaine distribution.
 

 In his affidavit, Detective Módica explained that, during countless hours of surveillance in the 1000 block of Eli Court, an area notorious for the retail distribution of narcotics and violence associated with that activity, he witnessed | numerous hand-to-hand narcotics sales. On April 5, 2006, Detective Módica observed defendant arrive in a silver Toyota Camry rental vehicle, and he watched as defendant was awaiting the arrival of another vehicle. Once the vehicle arrived, defendant entered the passenger side and interacted with the occupant. Two minutes later, defendant emerged from the vehicle, isolated himself from the other subjects congregating in the neighborhood, and counted a large sum of currency.
 

 Detective Módica said in the affidavit that, based on these facts, officers maintained a moving surveillance of defendant and observed him operating his vehicle in a reckless manner. They stopped defendant and issued him a traffic citation. Defendant informed the deputies that he resided at 220 Eliza Street in New Orleans, but they were unable to verify that address. He also falsely stated that he was coming from the Best Buy store in Harvey.
 

 After the traffic stop, an investigation revealed that defendant had been previously arrested on March 18, 2006 for driving while intoxicated and traffic violations. That arrest occurred after defendant struck a residence at 1042 Beechwood Street in Harvey at 4:40 a.m. During that arrest, defendant provided the address of 1047 Beechwood as his residence. The investigators surmised that defendant was intoxicated and mistakenly provided his true address. They believed that defendant mistook the residence at 1042 Beechwood for his own because of his impaired state of mind.
 

 On April 6, 2006, at 8:00 a.m., a JPSO lieutenant conducted surveillance in the 1000 block of Beechwood in an attempt to locate defendant’s vehicle. The lieutenant noticed that the 1047 Beechwood address was nonexistent, and that the sequence was 1045 and 1049. Thus, the lieutenant checked the address of 1049 Beechwood and located defendant’s rental vehicle. The investigators also confirmed that this address was affiliated with narcotics trafficker # 1.
 

 |fiThe background check of defendant also revealed that he had been stopped on March 12, 2006 and arrested for outstanding court attachments. A search of defendant’s vehicle incidental to that arrest resulted in the discovery of a shopping bag containing baking soda, sandwich bags,
 
 *293
 
 and a razor blade. These items raised the suspicions of the arresting officers, so they enlisted the assistance of a narcotic detecting canine. The canine alerted to several areas of the vehicle, but no narcotics were seized. The deputies noted, however, that defendant was in possession of a large sum of currency. Defendant said that he sold narcotics in the past, but that he no longer engaged in that activity. He was arrested on the attachments and provided an address of 220 Eliza Street in New Orleans.
 

 On April 7, 2006, Detective Módica conducted a brief surveillance of the residence at 1049 Beechwood and observed defendant’s rental vehicle in the driveway. He also observed defendant emerge from the residence briefly and then re-enter the structure. Detective Módica said in the affidavit that the practice of narcotics traffickers not supplying their true addresses to law enforcement was common and done to protect themselves from seizure of their narcotics and cash and to avoid arrest. He also said in the affidavit that, based on these facts, he believed that the premises were being utilized to conceal elements of defendant’s narcotics trafficking, and he requested a search warrant for that residence.
 

 At the motion to suppress hearing, Detective Módica testified that, on April 12, 2006, he executed a search warrant at 1049 Beechwood Drive in Harvey. While executing that search warrant he confronted defendant, advised him of his rights, and talked to him. Detective Módica asked defendant if he had any weapons in the house. Defendant answered affirmatively and said that there was a gun in the bedroom between his mattress and box spring. Detective Módica subsequently located the weapon in that location.
 

 | ^Defendant told the detective that he was residing at that address, but was going to move to 220 Eliza Street in New Orleans. At that time, however, nothing had been moved, and there was no indication that defendant had begun to move. Detective Módica observed a large, gray outdoor garbage can filled to the top in the living room or kitchen. The detective asked defendant why it was there, and defendant replied that he did not know, but there was nothing in the garbage can that belonged to him. Detective Módica ultimately recovered evidence from the garbage can.
 

 Detective Módica and defendant also had a conversation about why defendant was no longer going to be living at that residence. Defendant said that his girlfriend rented the residence and they had been dating a long time, but their relationship had taken a turn for the worse and another man was either living at or had been “involved” with that residence. He could not identify this other man.
 

 Detective Módica questioned defendant about his shoe size, and defendant responded that he wore between a ten and a ten-and-a-half size shoe. The detective testified that he located shoes that were in that size range in one of the bedrooms. There was also men’s clothing found in that room, along with drugs and the gun. The men’s clothing would have fit someone of defendant’s size and stature. Detective Módica also found in the kitchen a Chase savings statement and a fire insurance pamphlet addressed to defendant at 1049 Beechwood Drive. Defendant was the only one home at the time the search warrant was executed.
 

 LAW AND DISCUSSION
 

 On appeal, defendant argues that the trial court erred in denying his motion to suppress the evidence and his motion to reconsider suppressing the evidence. He contends that the affidavit in support of the search warrant provided inadequate facts to support a substantial basis for
 
 *294
 
 concluding that probable cause existed to ]¿ssue the search warrant. He further contends that the affidavit did not establish probable cause to believe that defendant had an adequate nexus to the residence or that narcotics would be found there.
 

 At the suppression healing, defense counsel contested Detective Modica’s affidavit in support of the search warrant. He argued that there were no specific facts within the four corners of the affidavit to show why the detective believed that narcotics would be found at 1049 Beechwood. He noted that the detective did not state in the affidavit that anyone saw narcotics in this house, that they did a controlled buy at this house, or that they saw anyone walk into or out of the house with packages. He argued that the affidavit only provided that the detective believed defendant was a drug dealer, and he wanted to search this house.
 

 Defense counsel stated that, in the affidavit, the detective said that officers saw defendant get into an automobile, stay inside of it for a couple of minutes, and then get out and count money. The trial judge responded that, based on those facts, an impartial magistrate would have believed that a drug transaction had just occurred. Defense counsel pointed out that the prior transaction did not occur at the Beechwood residence. The trial judge replied that the officers had probably finally figured out where defendant lived, and they wanted to search that house for evidence associated with drug trafficking. The trial judge also said he absolutely believed that this affidavit stated probable cause for the issuance of the search warrant, that he would have signed it, and that it showed in the four corners probable cause for the search of that residence.
 

 Defense counsel then argued that statements made by defendant during the execution of the search warrant should be suppressed. Detective Módica was called to testify. After hearing the detective’s testimony, the judge found that the | ssearch was constitutional and denied the motion to suppress the evidence. On appeal, defendant contends that the trial judge’s ruling was in error.
 

 A search warrant may be issued only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized.
 
 State v. Lee,
 
 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122,
 
 cert. denied,
 
 — U.S. —, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). Probable cause for the issuance of a search warrant “exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.”
 
 Lee,
 
 05-2098 at 14, 976 So.2d at 122. The determination of probable cause does not rest on an officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.
 
 Id.
 
 A search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized.
 
 State v. Casey,
 
 99-0023, p. 4 (La.1/26/00), 775 So.2d 1022, 1028,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 The task for a reviewing court is simply to ensure that under the totality of the circumstances the magistrate had a “substantial basis” for concluding that probable cause existed.
 
 Lee,
 
 05-2098 at 14, 976 So.2d at 122, citing
 
 Illinois v. Gates,
 
 462 U.S. 213, 236, 103 S.Ct. 2317,
 
 *295
 
 2331, 76 L.Ed.2d 527 (1983). An affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant.
 
 Casey,
 
 99-0023 at 4, 775 So.2d at 1028. Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic Land common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation.
 
 State v. Green,
 
 02-1022, p. 8 (La.12/4/02), 831 So.2d 962, 969. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers.
 
 Id.
 

 According to LSA-C.Cr.P. art. 703 D, when evidence is seized pursuant to a search warrant, the defendant bears the burden of proof on his motion to suppress that evidence. The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of that discretion.
 
 State v. Temple,
 
 01-655, pp. 10-11 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 705,
 
 writ denied,
 
 02-0234 (La.1/31/03), 836 So.2d 58.
 

 In the present case, under the totality of the circumstances, there was a substantial basis upon which to find probable cause to issue the search warrant. A Cl informed Detective Módica that cocaine was being distributed in the 1000 block of Eli Court in Gretna by narcotics trafficker # 1, the leader of a narcotics distribution organization, and that defendant, a relative of narcotics trafficker # 1, was a mid-level narcotics distributor in that organization. On April 5, 2006, the detective observed defendant engage in an apparent narcotics transaction in the 1000 block of Eli Court, an area known for narcotics distribution and violence associated with that activity. A criminal history check revealed that defendant had a previous conviction for possession of cocaine and an arrest for crack cocaine distribution.
 

 Although defendant said he resided at 1047 Beeehwood while he was intoxicated, the officers found no such address; however, his rental vehicle was seen parked in the driveway at 1049 Beeehwood, and defendant was seen briefly emerging from that residence and then re-entering the structure. The investigators also confirmed that this address was affiliated with narcotics trafficker # 1. 110Additionally, defendant was previously stopped in connection with a traffic violation and arrested, during which items associated with narcotics trafficking were found in his vehicle. Also during that stop, defendant admitted he had sold narcotics in the past.
 

 These facts and circumstances were sufficient to support the reasonable belief that relator either resided or spent a significant period of time at 1049 Beeehwood, that relator was distributing narcotics from that location, and that evidence of that offense or contraband might be found there. The Louisiana Supreme Court has recognized that the police and issuing magistrate can reasonably assume the fruits and instrumentalities of an offense are probably stored in a suspect’s home.
 
 State v. Profit,
 
 00-1174, pp. 1-2 (La.1/29/01), 778 So.2d 1127, 1128.
 

 In light of the foregoing, we find that the trial judge did not abuse his discretion by denying the motion to suppress evidence or the motion to reconsider suppressing the evidence.
 

 ERRORS PATENT
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The record reveals the following errors that require corrective action.
 

 
 *296
 
 Defendant pled guilty to possession of a firearm by a convicted felon (Count 1) and possession of cocaine in excess of 400 grams (Count 2), in violation of LSA-R.S. 14:95.1 and R.S. 40:967 F, respectively. LSA-R.S. 14:95.1 B provides for a mandatory fine
 
 of not
 
 less than
 
 $1,000.00 nor
 
 more than $5,000.00. LSA-R.S. 40:967 F(l)(c) provides for a mandatory fíne of not less than $250,000.00, nor more than $600,000.00. The guilty plea form indicates that defendant was advised | nthat he would receive separate fines of $1,000.00 and $250,000.00. During the guilty plea colloquy, the trial judge advised defendant that he would be fined $250,000.00 on the “drug charge” and $1,000.00 on the “weapons charge.”
 

 After the trial judge accepted defendant’s guilty plea, he correctly fined defendant $1,000.00 on the “firearms charge,” but he erroneously fined defendant $25,000.00 on the “drug charge.” The sentence is impermissibly indeterminate, because it is unclear whether there was a typographical error in the transcript, or whether the trial judge mistakenly fined defendant $25,000.00 instead of $250,000.00. Additionally, the commitment does not reflect that a fine was imposed on either count.
 

 Therefore, we remand this matter to the trial court for correction of the commitment to conform with the transcript to reflect that a fine of $1,000.00 was imposed on Count 1.
 
 State v. Watson,
 
 08-214, p. 13 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 787. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected minute entry/commitment to the officer in charge of the institution to which the defendant has been committed. See
 
 State ex. rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846. Additionally, we vacate the sentence on Count 2 and remand this matter for the trial judge to clarify the sentence.
 

 The minute entry and the commitment are inconsistent with the transcript in another respect. The bill of information reflects that defendant was charged with possession of cocaine in excess of 400 grams in violation of LSA-R.S. 40:967 F. The transcript indicates that defendant pled guilty to possession of cocaine in excess of 400 grams, which is a violation of LSA-R.S. 40:967 F(l)(c). However, the minute entries dated September 15 through 17, 2008 reflect that defendant was charged with “poss/witd cds over 28 grams” in violation of LSA-R.S. 40:967 F. 112The commitment dated September 17, 2008 also reflects that defendant pled guilty to “poss/witd cds over 28 grams.” Therefore, we order the trial court to correct the commitment and the minute entries to conform to the transcript to reflect that defendant was charged with and pled guilty to possession of cocaine in excess of 400 grams in violation of LSA-R.S. 40:967 F(l)(c).
 

 DECREE
 

 For the foregoing reasons, we affirm defendant’s conviction and his sentence on Count 1. We vacate defendant’s sentence on Count 2 and remand for the trial judge to clarify the sentence on this count during re-sentencing. Further, we remand this matter for correction of the commitment and minute entries to reflect that defendant was charged and pled guilty to possession of cocaine in excess of 400 grams, in violation of LSA-R.S. 40:967 F(l)(c).
 

 CONVICTIONS AND SENTENCE ON COUNT I AFFIRMED; SENTENCE ON COUNT 2 VACATED; REMANDED WITH INSTRUCTIONS.
 

 . Although a trial was held in this matter, defendant requested that only the transcripts from the hearings on the motion to suppress evidence and sentencing be prepared and included in the record on appeal. The transcript of the motion to suppress hearing, exhibits, and other documents in the record were used to set forth the facts of this case.
 

 [1]
 

 . The bill of information was amended on August 7, 2007 to reflect the correct predicate offense as case number 436-025 instead of 436-573. The bill was amended on September 15, 2008 to reflect that defendant was also known by the name of "Kiri Major.” According to defense counsel at the motion to suppress hearing, defendant's true name is “Kirt Major.”