MARION F. EDWARDS, Chief Judge.
 

 lain these consolidated appeals Carl Payne (“Payne”), defendant/appellant herein, appeals his convictions and sentencing on four counts of criminal activity and his adjudication and sentencing as a third felony offender. Payne was charged with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count one); possession with intent to distribute heroin in violation of La. R.S. 40:966(A) (count two); .unlawful possession of body armor in violation of La. R.S. 14:95.3 (count three); and possession of alprazo-lam in violation of La. R.S. 40:969(C) (count four). Payne entered a plea of not guilty to. all. counts and filed a motion to suppress .the evidence, which was denied. Ultimately, Payne was tried by a jury and convicted as charged on all counts.
 

 The trial court-imposed sentences of fifteen years of imprisonment at hard labor and a $5000 fine on count one, and thirty years of imprisonment at hard labor on count two. As to counts one and two, the trial court imposed these sentences without the benefit of parole, probation, or suspension of sentence. For counts | sthree and four, defendant was sentenced to two years of imprisonment at hard labor for each count. All of defendant’s sentences were ordered to run concurrently with each other. Payne filed a timely appeal
 
 *1292
 
 from the convictions and sentences that was granted by the trial court.
 
 [1]
 

 The State filed an habitual offender bill of information charging Payne with being a third felony offender. The State used Payne’s underlying conviction of possession with intent to distribute heroin (count two), and his prior convictions of possession of cocaine in case No. 02^1752, and armed robbery and aggravated battery in case No. 95-4987.
 

 Payne denied the allegations in the multiple bill and filed a response and objection to the multiple bill. In this response, he argued the following: (1) the alleged predicate convictions were obtained in violation of the constitutions because he was not advised of his rights at the time he pled guilty to the predicate offenses; (2) he was not advised of the possible future applicability of La. R.S. 15:529.1 at the time of pleading guilty to the predicate offenses; (3) he was not properly Boykinized when his predicate convictions were obtained; and (4) other further facts to be adduced at trial on the matter. Payne also filed a motion for discovery relating to the multiple bill.
 

 The trial court denied Payne’s motion to quash and, after a hearing, found Payne was a third felony offender. The trial court vacated Payne’s original sentence imposed on the possession of heroin with intent to distribute (count two), and imposed an enhanced sentence of fifty years of imprisonment at hard labor to be served without benefit of parole, probation, or suspension of sentence. The |4sentence was also ordered to run concurrently with his other sentences. Payne filed a second timely appeal from the multiple bill proceedings.
 
 [2]
 

 Both appeals were consolidated in this Court.
 

 FACTS
 

 Sergeant Elvin Módica of the Jefferson Parish Sheriffs Office received information from a confidential informant that led to the investigation of a person known as “Pimp” at an address of 1445 Lincoln Avenue in Jefferson Parish. After confirmation of the information received, a search warrant was executed at 1445 Lincoln Avenue.
 

 Lieutenant Daniel Jewell, Jr. of the Jefferson Parish Sheriffs Office participated in the execution of the warrant. When he arrived, there were several individuals, including adults and children, “malingering about” under the carport of the residence. After Lieutenant Jewell exited his vehicle, a black male wearing a black T-shirt fled into the residence. Lieutenant Jewell chased the male, who was later identified as Payne, into the residence and apprehended him about a foot into the door of a bedroom at the end of the hallway. No one else was in the room. Sergeant Módi-ca, who was present when the search warrant was executed, testified that certain evidence was recovered from the bedroom where Lieutenant Jewell secured Payne. Several items were seized from the entertainment center in this bedroom, including a small .22-caliber revolver with three live cartridges, a clear plastic bag with nine foil packages containing tan powder, and one plastic bag inside of that with light brown powder. The foil packages were found on the same shelf as the revolver. A black leather wallet, with Payne’s Louisiana
 
 *1293
 
 identification card that reflected the 1445 Lincoln Avenue address and a debit card, was also recovered from the entertainment center.
 

 | ¡-.Officers found a loaded Smith & Wesson .40-caliber handgun wrapped in a white T-shirt on the floor of the bedroom between the bunk beds and the dresser. A photograph of Payne was also recovered from the room during the search. '
 

 In other parts of the residence, a sock was found that contained ten Winchester .40-caliber Smith & Wesson rounds. Other items were found in a bathroom that was attached to and only accessible from Payne’s bedroom. Among those objects, were a plastic sandwich bag with one small foil package and one clear plastic bag containing tan powder, alprazolam, and a piece of foil with tan powder wrapped in a piece of plastic. A razor blade, aluminum foil, and two digital scales were also found in the bathroom.
 

 A bulletproof vest or “body armor” was found hanging in the closet in Payne’s bedroom. An investigation revealed that the vest belonged to Lieutenant Timmy Miller of the Jefferson Parish Sheriffs Office. The vest had been last seen about ten years before when it disappeared from inside of the officer’s vehicle. Also in the closet, Sergeant Módica recovered a Winchester 12-gauge semiautomatic shotgun.
 

 Other evidence seized in the bedroom include an envelope addressed to Payne, legal documentation from case Nos. 95-4987 and 02^4752, and a photocopy of case law with the name “Pimp” written on it twice. A clear plastic bag with light-colored powder was found in a dog bowl in the kitchen.
 

 Five hundred eight-six dollars ($586) in cash was removed from Payne’s right rear pocket. When asked where the money came from, Payne responded that he did not have a job and gave Sergeant Módica a few answers, none of which could be verified.
 

 Tammy White, Payne’s mother, testified that Payne was living at the residence at the time of the search. Although Mrs. White admitted that the room ^belonged to Payne at the time, she denied that she gave police officers that information when the search warrant was executed. Mrs. White stated that Payne had stayed in the room every night for the prior two months. She explained that she was in the kitchen when the police entered the residence and showed her a badge. She denied that the police ever showed her a search warrant. She testified that police came back and gave a warrant to her husband on the day after the search.
 

 LAW AND DISCUSSION
 

 In the first appeal, both defense counsel and Payne have assigned and briefed errors to this Court for our consideration. Through his defense counsel, Payne argues both the original and the enhanced sentences are excessive. In a
 
 pro se
 
 brief, Payne argues his pre-trial motion to suppress should have been granted because the affidavit used to support the search warrant failed to establish probable cause. In the brief on the appeal of the multiple offender proceedings, Payne argues the trial court erred in finding him to be a third felony offender.
 

 EXCESSIVE SENTENCE
 

 Payne’s arguments on the excessive sentence assertion encompass both the original sentence on count two and the enhanced sentence on the multiple offender bill of information. However, since the original sentence was vacated before imposition of the enhanced sentence, any argument as to the original thirty-year sen-
 
 *1294
 
 tenee is moot because it no longer exists.
 
 [3]
 

 Although Payne also mentions his fifteen-year sentence imposed for count one, he does not specifically argue that this sentence is excessive. Payne does not include any argument or citation of authority regarding the excessiveness of his fifteen-year sentence. All specifications or assignments of error must be briefed |7and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed.
 
 [4]
 
 Payne’s mere assertions of excessiveness without supporting legal argument on the sentence imposed on count one present nothing for review on appeal.
 
 [5]
 

 Payne objected to the enhanced sentence imposed by the court in the multiple offender proceedings in the trial court as excessive. However, Payne did not file a motion to reconsider the sentence in the trial court.
 

 The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to ■ a review of the sentence only for constitutional excessiveness.
 
 [6]
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 [7]
 
 In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 [8]
 
 In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of -the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the |ssame court and other courts.
 
 [9]
 
 Generally, the maximum sentences are reserved for. cases involving the most serious violations of the offense charged and the worst type of offender.
 
 [10]
 
 A trial judge is in the best position to. consider the aggravating and mitigating circumstances of a case, and, therefore, is given broad discretion in sentencing.
 
 [11]
 

 As a third felony offender, defendant faced thirty-three years and four months to one hundred years of imprison
 
 *1295
 
 ment.
 
 [12]
 
 We do not find the trial court abused its broad sentencing discretion in sentencing Payne to fifty years of imprisonment. Payne had prior convictions of armed, robbery, aggravated battery, and possession of cocaine. At the same time Payne was convicted of possessing heroin with the intent to distribute, he was also convicted of three other offenses, including possession of alprazolam, possession of a firearm by a convicted felon, and unlawful possession of body armor. Further, Payne illustrated a disregard for the welfare of others by keeping dangerous narcotics and loaded weapons in a house with children.
 

 The enhanced sentence is not grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Further, the sentence does not shock this Court’s sense of justice. We find no merit in this assignment of error.
 

 MOTION TO SUPPRESS
 

 In a
 
 pro se
 
 brief, Payne asserts the trial court erred in denying a motion to suppress the evidence because the allegation contained in the affidavit was not corroborated and the information upon which the affidavit was based was vague and untested. Payne contends that the alleged transaction took place outside with |0“Pimp” and that the informant did not observe heroin inside the premises. Payne challenges his identification as “Pimp” and alleges that there was no investigation into whether the suspect resided at the residence. Payne concludes that the affidavit failed to establish probable cause for issuance of the search warrant.
 

 As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant.
 
 [13]
 
 A search, warrant, may be issued only upon probable cause to establish to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized.
 
 [14]
 
 Probable cause for the issuance of a search warrant “exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.”
 
 [15]
 
 An affidavit supporting a séarch warrant is presumed to be valid and the defendant has the burden of proving that the representations made in the affidavit are false.
 
 [16]
 

 The determination of probable cause does not rest on an officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.
 
 [17]
 
 A search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized.
 
 [18]
 

 
 *1296
 
 The task for a reviewing court is simply to ensure that under the totality of the circumstances the magistrate had a “substantial basis” for concluding that Improbable cause existed.
 
 [19]
 
 Within its four corners, an affidavit must contain the facts establishing the existence of probable cause for issuing the warrant.
 
 [20]
 
 Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation.
 
 [21]
 
 Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers.
 
 [22]
 

 When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence.
 
 [23]
 
 The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of its discretion.
 
 [24]
 
 Marginal cases should be resolved in favor of a finding that the issuing magistrate’s judgment was reasonable.
 
 [25]
 

 In the present case, under the totality of the circumstances, we find there was a substantial basis upon which to find probable cause to issue the search warrant. Detective Patrick Evans of the Jefferson Parish Sheriffs Office stated the following in his “Application for and Affidavit in Support of a Search and Seizure Warrant” for the search of 1445 Lincoln Avenue in Jefferson Parish:
 

 In late May 2009, Detective Patrick Evans, assigned to the Investigation Bureau Project Star Unit of the Jefferson Parish Sheriffs Office, was contacted by a confidential informant whose credit has been established by independent corroboration concerning the retail distribution of heroin from 1445 Lincoln Avenue, Jefferson. The confidential informant stated that a black male known as “PIMP” Inwas distributing quantities of heroin from 1445 Lincoln Avenue, Jefferson. The confidential informant stated he was in a position to effect a controlled purchase of heroin from “Pimp” at 1445 Lincoln Avenue, Jefferson.
 

 Within the past forty-eight (48) hours, Detective Patrick Evans and Sergeant Elvin Módica met with the confidential informant to attempt a controlled purchase of heroin from 1445 Lincoln Avenue, Jefferson. Detective Evans met with the confidential informant and took all the necessary precautions to ensure he was free of all contraband.
 

 Detective Evans provided the confidential informant with official funds to purchase a quantity of heroin from 1445 Lincoln Avenue, Jefferson. Subsequently, Detective Evans and Sergeant Módi-ca followed the confidential informant, never losing sight of him, to the residence of 1445 Lincoln Avenue, Jefferson. Detective Evans and Sergeant Módica observed the confidential informant
 
 *1297
 
 knock on the door at 1445 Lincoln Avenue, Jefferson.
 

 A Black Male emerge [sic] from the residence and met with the informant. After a brief conversation, there was a hand-to-hand exchange between the informant and this Black Male. The informant turned and walked away. The Black Male turned and entered the residence. Detective Evans and Sergeant Módica maintained a continuous surveillance on the confidential informant until he arrived at a pre-arranged meeting location.
 

 Once at this location, the confidential informant tendered a quantity of suspected heroin to Detective Evans. A presumptive field test was conducted on the substance, which yielded a positive response for the presence of Heroin. Again, all the necessary precautions were taken to ensure the confidential informant was free of all contraband.
 

 The confidential informant stated that he purchased the heroin from “Pimp” at 1445 Lincoln Avenue, Jefferson. The confidential informant stated once at the residence he met with Pimp and he requested a quantity of heroin. The confidential informant stated “Pimp” produced a quantity of heroin. “Pimp” provided the confidential informant with the heroin in exchange for the U.S. currency. While the confidential informant was departing the residence “Pimp” stated to the confidential informant to return if additional quantities were needed.
 

 Detective Evans and Sergeant Módica returned to the Investigation Bureau and secured the quantity of heroin in the narcotics evidence locker.
 

 Based upon the information detailed above, Detective Patrick Evans respectfully requests a [sic] order of search be issued for 1445 Lincoln Avenue, Jefferson, located within the Parish of Jefferson and |12State of Louisiana, authorizing the search for controlled dangerous substances, more specifically heroin, paraphernalia associated with the packaging, distribution and use of a controlled dangerous substance, specifically heroin, any documentation relative to distribution; and documentation regarding residency or associated with narcotic trafficking; and any assets, including currency, which may be the proceeds of narcotic trafficking.
 

 These facts and circumstances were sufficient to support the reasonable belief that Payne was distributing heroin from the residence at 1445 Lincoln Avenue. Although Payne raises arguments of vagueness and reliability in regards to the confidential informant, this case involves more than a tip from an informant. The affiant personally observed a controlled buy outside of the residence between the informant and the individual he identified as “Pimp.”
 

 When a search warrant is not dependent upon the credibility of the confidential informant but on police observation, lack of evidence regarding the informant’s credibility will not render a search warrant invalid.
 
 [26]
 
 Although the affiant did not provide specific information regarding the informant’s reliability or success rate, the search warrant was primarily based on the controlled buy observed by the affiant. This Court has held that such a successful buy is sufficient to find
 
 *1298
 
 that there was probable cause for a warrant.
 
 [27]
 

 We find there was probable cause for issuing the search warrant, especially in light of the controlled buy conducted outside of the residence at 1445 Lincoln Avenue and observed by the affiant. Although Payne argues that the transaction was conducted outside the residence and, therefore, the informant did not observe contraband inside of the residence, it is reasonable that evidence of the offense or contraband might be found inside of the • residence. The Louisiana Supreme Court | ishas recognized that the police and issuing magistrate can reasonably assume the fruits and instrumentalities of an offense are probably stored in a suspect’s home.
 
 [28]
 

 Payne also appears to suggest that there was lack of corroboration or investigátion into the informant’s tip. However, the controlled buy set up with the informant at the specific address indicated by the informant served to corroborate the tip that heroin was being sold from the residence by a black male known as “Pimp.” Further, Payne has failed to prove the representations made in the affidavit were false.
 

 In determining whether the trial court’s ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing, but also may consider pertinent evidence presented at trial.
 
 [29]
 
 During trial the State presented evidence that documentation was found in Payne’s room during the search with the name “Pimp” written on it. Although Payne questions whether there was an investigation to see if “the suspect” lived at the residence, Payne’s mother confirmed at trial that he was living at the residence at the time of the search. Further, the search warrant affidavit shows that Sergeant Módica witnessed the controlled buy with the informant and the person known as “Pimp.” At trial, it was established that Sergeant Módica was present when the search warrant was executed at the residence and when Payne was apprehended.
 

 Based on the foregoing, we find that the trial court did not abuse its discretion by denying the motion to suppress evidence obtained from the execution of the search warrant. As such, Payne’s
 
 pro se
 
 supplemental assignment of error is without merit.
 

 MULTIPLE offender adjudication
 

 Payne argues the trial court erred in finding him to be a multiple offender because of defects in the predicate offenses. He contends that the State’s proof of his prior convictions was insufficient. He claims that he was never advised of the maximum sentencing exposure for either of the pleas on the predicate offenses, or that the conviction could be used later to make him a multiple offender. He notes that the transcript only reflects that the judge asked defense counsel if he went over the plea form with Payne.
 

 The State responds that the.trial court properly found no constitutional deficiency regarding the use of the predicate conviction in case No. 02-4752, where Payne was found guilty at trial. For this conviction, the State contends it was only required to produce evidence of the conviction, and the presumption of regularity of judgment was sufficient to meet its original burden of
 
 *1299
 
 proof. Further, Payne’s argument on this assignment of error only relates to the guilty pleas.
 

 In its presentation, the State used Payne’s underlying Conviction of possession with intent to distribute heroin in case No. 09-3350 (count two) and his prior convictions of possession of cocaine in case No. 02-4752 and armed robbery and aggravated battery in case No. 95-4987.
 

 As for case No. 95-4987, the State presented four exhibits, three of which were admitted into evidence at trial for the underlying conviction in district court case No. 09-3350; State’s Exhibit 3 included the fingerprint card with the fingerprints taken by the expert for the underlying offense. The State also presented evidence related to Payne’s conviction of possession of cocaine in case No. 02-4752. This exhibit included fingerprints, a prior multiple bill with the possession of cocaine conviction as the underlying conviction, a waiver of rights form, and commitments reflecting the underlying conviction and sentencing on the |T.^multiple bill. The State noted that the expert had compared the fingerprints to those taken for the underlying conviction and determined the fingerprints were made by the same person. The State also presented a certified package in case No. 95-4987, which showed that Payne was originally charged with armed robbery and attempted second degree murder and that the charge was amended to aggravated battery. It further reflected that Payne pled guilty to those charges. The exhibit also included fingerprints, which the State noted were identified at trial by the expert as belonging to the same person on trial. The new exhibit presented by the State was a certified copy of case No. 95-4987, which included the bill of information, fingerprints, a waiver of rights form, sentencing minute entry, and a transcript of the colloquy between Payne and the trial judge at the time of the pleas. After reviewing the exhibits, the trial court found Payne was a third felony offender. Payne objected to the finding.
 

 To prove a defendant is an habitual offender, the State must initially prove the prior felony convictions and that defendant is the same person who was convicted of the prior felonies.
 
 [30]
 
 When the State relies on a prior conviction that is based on a guilty plea in proving defendant’s multiple offender status and defendant denies the multiple bill’s allegations, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken.
 
 [31]
 

 If the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity.
 
 [32]
 
 If defendant .meets this burden, the burden shifts back to the State to prove the | ^constitutionality of the plea, that is, that the plea was knowing and voluntary.
 
 [33]
 
 This final burden can be met if the State produces a “perfect transcript” articulating the
 
 Boykin
 
 colloquy between the defendant and the trial judge or .any combination of a guilty plea form, a minute entry, or an “imperfect” transcript.
 
 [34]
 
 If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence
 
 *1300
 
 submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary and made with an articulated waiver of the three
 
 Boykin
 
 rights.
 
 [35]
 

 The Habitual Offender Law
 
 [36]
 
 does not require the State to use a specific type of evidence in order to carry its burden of proof.
 
 [37]
 
 The defendant’s prior convictions may be proven by any competent evidence.
 
 [38]
 

 The State must prove defendant’s identity as the same person convicted of a prior felony. However, Payne’s arguments do not encompass a challenge to the commonality of identity. Thus, that issue will not be discussed.
 

 Payne also admitted that he had prior convictions for armed robbery, aggravated battery, and possession of cocaine at the suppression hearing. At trial, it was established that, during the search, documentation regarding case Nos. 02-4752 and 95-4987 were recovered from Payne’s room.
 

 The State established that Payne pled guilty to the offenses and was represented by counsel when the guilty pleas were taken. Thereafter, Payne failed to present affirmative evidence of any infringement on his rights or procedural irregularity in the taking of his predicate pleas and, therefore, the burden never shifted to the State to prove the constitutionality of the predicate pleas.
 

 | i7Payne argues that, at the time he pled guilty, he was not informed of the maximum sentencing exposure. He further argues that he was not advised that his conviction could be later used for purposes of multiple billing him. Similar arguments have been rejected by this Court, and we have found that these elements are not part of the constitutionally required
 
 Boykin
 
 rights.
 
 [39]
 

 La.C.Cr.P. art. 556.1 requires the trial court to advise the defendant of his sentencing exposure and the nature of the charge to which the plea is offered prior to accepting a guilty plea. However, that article did not become effective until August 15,1997 and, therefore, was not applicable when Payne entered his guilty pleas on April 30, 1996. Furthermore, the Louisiana Supreme Court has held that advice with respect to the defendant’s sentencing exposure may facilitate the taking of a voluntary guilty plea, but it has never formed part of the core
 
 Boykin
 
 requirements for the entry of a presumptively valid guilty plea.
 
 [40]
 
 Therefore, at the time of the 1996 guilty pleas, there was no statutory or jurisprudential requirement to inform defendant of the sentencing exposure for the crimes.
 

 Moreover, the maximum sentences for each count were included in the guilty plea form in case No. 95-4987. Further, after the colloquy and sentencing in case No. 95-4987, the judge mentioned the maximum sentences that could have been imposed and the possibility of a future multiple bill upon commission of another felony.
 

 
 *1301
 
 Based on the foregoing, the trial court properly found Payne to be a third felony offender.
 

 ^ERRORS PATENT
 

 Payne requests an error patent review. However, this Court routinely reviews the record for errors patent.
 
 [41]
 
 Upon review we find the following errors patent:
 

 Although the commitment in this case reflects that Payne was properly advised of the prescriptive period for filing post-conviction relief pursuant to La. C.Cr.P. art. 930.8, the transcript reflects otherwise. The transcript prevails when there is a discrepancy between the commitment and the transcript.
 
 [42]
 
 According to the transcript, the trial judge advised defendant that he had “two (2) years to file for post conviction relief.” This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete.
 
 [43]
 

 Payne is hereby advised, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.
 
 [44]
 

 There is an additional discrepancy between the commitment and the transcript regarding Payne’s sentence for count one. The transcript reflects that Payne received a $5000 fine for his conviction for being a felon in possession of a firearm. However, the commitment does not reflect that a fine was imposed.
 

 There is also a patent error in the enhanced sentence. “La. R.S. 40:966(B)(1) provides that for possession with intent to distribute heroin a defendant is subject to ‘imprisonment for not less than five nor more than fifty |19years at hard labor at least five years of which shall be served without benefit of probation, or suspension of sentence, and may, in addition, be required to pay a fine of not more than fifty thousand dollars.’ ”
 
 [45]
 

 In the present case, the trial court sentenced defendant to fifty years of imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. La. R.S. 15:529.1(G) provides that the enhanced sentence shall be without benefit of probation or suspension of sentence. The restrictions imposed on parole eligibility in multiple offender sentences under La. R.S. 15:529.1 “are those called for in the reference statute.”
 
 [46]
 
 The underlying statute in the present case does not provide for the prohibition of parole.
 
 [47]
 
 As such, Payne’s enhanced sentence should not have been imposed with the parole restriction.
 

 We hereby amend Payne’s sentence to delete the prohibition on parole and re
 
 *1302
 
 mand the case to the trial court for correction of the commitment.'
 
 [48]
 
 We direct the district court to make the entries in the minutes reflecting these changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which Payne has been sentenced.
 
 [49]
 

 Finally, the record does not disclose that Payne was advised of his rights prior to the multiple bill hearing. The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when, as in the matter before us, the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant.
 
 [50]
 

 12nFor the foregoing reasons, we affirm Payne’s convictions and adjudication as a multiple offender. We amend the enhanced sentence to delete the prohibition on parole, and, as amended, we affirm the enhanced sentence. We direct the trial court to make the entries in the minutes reflecting these changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which Payne has been sentenced. We further affirm the sentences on counts one, three, and four, and we inform Payne of the time limitation for filing post-conviction relief as set forth in this opinion.
 

 CONVICTIONS AFFIRMED; SENTENCES AMENDED, AND, AS AMENDED, AFFIRMED
 

 [1]
 

 .
 
 State v. Payne,
 
 No. 10-KA-46 was taken prematurely because it was filed after his convictions and imposition of the original sentences but before the multiple offender adjudication and sentence. However, defendant’s subsequent re-sentencing after his multiple bill proceedings, as evidenced in case No. 10-KA-47, cured this procedural defect.
 

 [2]
 

 .
 
 State v. Payne,
 
 No. 10-KA-47.
 

 [3]
 

 .
 
 State v. Jenkins,
 
 07-423 (La.App. 5 Cir. 10/30/07), 970 So.2d 1166,
 
 writ denied,
 
 07-2243 (La.5/30/08), 983 So.2d 895.
 

 [4]
 

 . Rule 2-12.4 of the Uniform Rules, Courts of Appeal.
 

 [5]
 

 .
 
 State v. Fernandez,
 
 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764.
 

 [6]
 

 . La.C.Cr.P. art. 881.1.
 
 See also, State v. Ragas,
 
 07-3 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 272,
 
 writ denied,
 
 07-1440 (La.1/7/08), 973 So.2d 732,
 
 cert.
 
 denied, - U.S. -, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008).
 

 [7]
 

 .
 
 State v. Warmack,
 
 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109.
 

 [8]
 

 .
 
 State v. Berry,
 
 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131,
 
 writ denied,
 
 08-1660 (La.4/3/09), 6 So.3d 767.
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 .
 
 Id.
 

 [11]
 

 .
 
 State v. Williams,
 
 03-3514 (La.12/13/04), 893 So.2d 7, 16.
 

 [12]
 

 .
 
 See,
 
 La. R.S. 15:529.1(A)(l)(b)(i).
 

 [13]
 

 .
 
 State v. Holmes,
 
 08-719 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 278,
 
 writ denied,
 
 09-0816 (La.1/8/10), 24 So.3d 857.
 

 [14]
 

 .
 
 State v. Lee,
 
 05-2098 (La.1/16/08), 976 So.2d 109, 122,
 
 cert. denied,
 
 - U.S. -, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).
 

 [15]
 

 . State v. Lee,
 
 976 So.2d at 122 (citation omitted).
 

 [16]
 

 .
 
 State v. Johnson,
 
 08-265 (La.App. 5 Cir. 8/19/08), 994 So.2d 595, 599.
 

 [17]
 

 .
 
 State v. Lee,
 
 976 So.2d at 122.
 

 [18]
 

 .
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022, 1028,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 [19]
 

 .
 
 State v. Lee,
 
 976 So.2d at 122 (citing
 
 Illinois v. Gates,
 
 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)).
 

 [20]
 

 .
 
 State v. Casey,
 
 775 So.2d at 1028.
 

 [21]
 

 .
 
 State
 
 v.
 
 Green,
 
 02-1022 (La.12/4/02), 831 So.2d 962, 969.
 

 [22]
 

 .
 
 Id.
 

 [23]
 

 .
 
 See,
 
 La.C.Cr.P. art. 703(D);
 
 State v. Johnson,
 
 994 So.2d at 599.
 

 [24]
 

 .
 
 State v. Lee,
 
 976 So.2d at 122.
 

 [25]
 

 .
 
 State v. Rodrigue,
 
 437 So.2d 830, 833 (La.1983).
 

 [26]
 

 .
 
 State v. Shumaker,
 
 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, 287,
 
 writ denied,
 
 07-0144 (La.9/28/07), 964 So.2d 351.
 

 [27]
 

 .
 
 See, State v. Hogan,
 
 02-924 (La.App. 5 Cir. 1/28/03), 839 So.2d 296, 300.
 

 [28]
 

 .
 
 State v. Major,
 
 09-370 (La.App. 5 Cir. 11/24/09), 26 So.3d 289, 295.
 

 [29]
 

 . State v. Mollette,
 
 08-138 (La.App. 5 Cir. 11/25/08), 2 So.3d 461, 467,
 
 writ denied,
 
 09-0155 (La.10/16/09), 19 So.3d 472.
 

 [30]
 

 .
 
 State v. Lanieux,
 
 09-676 (La.App. 5 Cir. 3/9/10), 42 So.3d 979, 981.
 

 [31]
 

 .
 
 State v. Shelton,
 
 621 So.2d 769, 779-80 (La.1993);
 
 State v. Lanieux,
 
 42 So.3d at 983.
 

 [32]
 

 .
 
 Id.
 

 [33]
 

 .
 
 Id.
 

 [34]
 

 .
 
 State v. Lanieux,
 
 42 So.3d at 983.
 

 [35]
 

 .
 
 Id.
 

 [36]
 

 . La. R.S. 15:529.1.
 

 [37]
 

 .
 
 State v. Payton,
 
 00-2899 (La.3/15/02), 810 So.2d 1127, 1132 (citation omitted).
 

 [38]
 

 .
 
 Id.
 

 [39]
 

 .
 
 See, State v. Woods,
 
 09-399 (La.App. 5 Cir. 3/9/10), 38 So.3d 391;
 
 State v. Morgan,
 
 06-529 (La.App. 5 Cir. 12/12/06), 948 So.2d 199;
 
 State v. Tomlinson,
 
 05-201 (La.App. 5 Cir. 10/6/05), 916 So.2d 1200, 1203 (citing
 
 State v. Guzman,
 
 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158, 1164).
 

 [40]
 

 .
 
 See, State v. Lanieux,
 
 42 So.3d at 983.
 

 [41]
 

 . La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 [42]
 

 .
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 [43]
 

 .
 
 State v. Grant,
 
 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598.
 

 [44]
 

 .
 
 See, State v. Neely,
 
 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538,
 
 writ denied,
 
 09-0248 (La.10/30/09), 21 So.3d 272.
 

 [45]
 

 .
 
 State v. Dee,
 
 09-712 (La.App. 5 Cir. 2/23/10), 34 So.3d 892, 902.
 

 [46]
 

 .
 
 State v. Esteen,
 
 01-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 79,
 
 writ denied,
 
 02-1540 (La.12/13/02), 831 So.2d 983 (quoting
 
 State v. Bruins,
 
 407 So.2d 685, 687 (La.1981)).
 

 [47]
 

 .
 
 See, State v. Dee, supra.
 

 [48]
 

 .
 
 Id.;
 
 La.C.Cr.P. art. 882(A).
 

 [49]
 

 .
 
 See,
 
 La.C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
 

 [50]
 

 .
 
 State v. Lanieux,
 
 42 So.3d at 984.